IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHRISTINE HENDERSON, | Civ. No. 6:24-cv-01741-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| LEAH JESKE, | |
| Defendant. | |

_____

AIKEN, District Judge.

Self-represented Plaintiff Christine Henderson seeks leave to proceed *in forma pauperis* ("IFP") in this action. ECF No. 2. The Court finds that it has no jurisdiction over Plaintiff's claims and that this case must be dismissed. For that reason, as more fully explained below, Plaintiff's IFP Petition, ECF No. 2, is DENIED. The Complaint, ECF No. 1, is DISMISSED without service on Defendant and without leave to amend.

**LEGAL STANDARD**

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make

two determinations.  First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1).  Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

With regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  That is, the court should

construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## BACKGROUND

### I.   Historical Background

Over the years, Plaintiff has filed more than a dozen lawsuits related to the death of her brother, Patrick.[1] So far, none have been successful. In this case, like Plaintiff's others, the record shows that Plaintiff was a caretaker for Patrick. "Henderson's Book About Patrick" ECF No. 5-5 at 54. She was very close to him and some healthcare providers noted her to be an "unwavering advocate" for his well-being. *Id.* at 59. From how many lawsuits Plaintiff has filed, it can be understood that Patrick's death caused Plaintiff significant distress.

The record is that Plaintiff became Patrick's legal guardian in 2014. ECF No. 5-2 at 5. Patrick had developmental disabilities and other significant health challenges. *Id.* at 73. When he was eight years old, Patrick was placed in Fairview Training Center, where he lived for almost thirty years. ECF No. 5-5 at 32. He was later placed in a group home. *Id.* Exhibits show that Plaintiff was concerned that

---

[1] In the last six months alone, Plaintiff has filed at least three other actions: *Henderson v. Howard-Schwan*, 24-1755; *Henderson v. Kaiser*, 24-1690, and *Henderson v. Ellis*, 24-1756. All generally relate to the same set of allegations which the Court has dismissed many times over.

Patrick was not receiving proper care in the group home after he was hospitalized for malnutrition. *Id*. Patrick came to live with Plaintiff in 2016. *Id*.

As can be seen from Plaintiff's exhibits, she has taken great care to compile his medical record and document her own caretaking record for Patrick. *See generally* ECF No. 5. Plaintiff took him to speech and language classes to help with his verbal skills and generally improve his quality of life. ECF No. 5-5 at 25. The record is that Plaintiff was very passionate about Patrick's care, her own allegations showing that Plaintiff disagreed with nearly all of Patrick's physicians about his medications, treatment, and diagnosis. ECF No. 5-7 at 2.

Plaintiff wanted to be very involved in caring for Patrick. For example, at the hospital, Plaintiff attempted "suctioning" Patrick, and the hospital staff warned her she could not perform medical care at the hospital because she was not employed there. *Id*. at 3. This was upsetting for Plaintiff. *Id*. Plaintiff sometimes refused to follow treatment plans if she did not agree with the physician's diagnosis. *Id*. at 2. At some point, during hospital admission, Patrick was moved to an oncology department and during that time, he passed away. *Id*. at 4.

Since then, Plaintiff filed several suits against involved doctors, hospital staff, and social service workers. The Court has routinely dismissed Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) because it lacks jurisdiction and/or because Plaintiff fails to state a claim under Rule 12(b)(6).

## II.    Factual Allegations

Plaintiff alleges that Leah Jeske, MSW—a social worker with Riverbend Hospital in Springfield, Oregon—defamed Plaintiff. Compl. at 4, ECF No. 1. As evidence of defamation, Plaintiff attached to her complaint Jeske's medical notes taken during or after visits with Patrick.

Jeske's notations in Patrick's medical chart are that Plaintiff had been Patrick's legal caretaker for some time and was receiving benefits for this. Compl. at 19. Patrick presented to the hospital with "severe dehydration and likely aspiration pneumonia." *Id*. Patrick's care regimen required his food to be pureed, but Jeske noted that he had aspirated on solid food. *Id*.

According to Plaintiff's exhibits, Plaintiff made it very difficult for in-home care workers to provide services to Patrick. Jeske notes that Patrick had problems and difficulty "retaining caregiving other than [Plaintiff] due to her tendency to [unreadable] with others' work with [Patrick]." *Id*. Jeske notes that Patrick qualified under his medical care plans for in home nursing, but that the nurses became unwilling to assist because Plaintiff would intervene and would tell them that she "does not wish to adhere to their professional advice and care." *Id*. Jeske was concerned about Plaintiff's "appearing to have little correct knowledge of [Patrick's] medical needs, including his dehydration status and extensive aspiration of food that appears not to be pureed." *Id*. The whole of the record is that Plaintiff believes she knew Patrick best and that she understood what care he needed.

Jeske tried to impress upon Plaintiff the urgency of the circumstances surrounding Patrick's hospital admission, stating, "Yesterday, [Plaintiff] was

provided information by Sarah Kuzma, PA, in relation to the severity of [Patrick's] condition." *Id*. Jeske states that she told Plaintiff that it took a "team of intensive doctors" to stabilize Patrick when Plaintiff brought him to the hospital. Jeske noted that "large amounts of food" had aspirated, and that Patrick's upper right lobe was completely blocked by food matter, including chunks of meat and beans." *Id*. at 20. The hospital ultimately called a "code blue" when it lost Patrick's pulse. *Id*.

On another date, Jeske met with Plaintiff to interview her about Patrick's current condition and needs. *Id*. at 21. Jeske wrote from her conversation with Plaintiff that it was "difficult to understand exactly" what Patrick's "baseline" was. *Id*. Plaintiff described to Jeske her dissatisfaction with Lane County Developmental Disabilities Services ("DDS"), and Jeske noted that Plaintiff was "very animated" when discussing those shortcomings. *Id*. Jeske noted that Plaintiff's "story was not aligned in many ways" with what Patrick's DDS caseworker, Michael Stockdale, described, and that for a while, Patrick did not have services through DDS because Plaintiff had cancelled them. *Id*.

The pleadings and exhibits show that Patrick was entitled to a "great deal of services" through DDS, but, at some point in Patrick's medical management, Plaintiff had cancelled Patrick's DDS plan applied instead for services with Senior & Disability Services of Eugene, "thinking that she would get more assistance" from one versus the other. *Id*. It turned out not to be the case. DDS caseworker Stockdale worked with Plaintiff to get Patrick back on the correct DDS program for services. *Id*.

Jeske noted that at times Plaintiff seemed confused and that she does not seem to understand why Patrick was admitted to the hospital. *Id*. Rather than accept that Patrick had aspirated due to lack of pureed food, as required by his plan of care, Jeske documented that Plaintiff attributed it to herself having passed on a cold or the flu to Patrick. *Id*. Jeske wrote that Plaintiff would not accept any other care setting for Patrick other than herself as a caregiver for her brother. *Id*. According to Plaintiff's exhibits, Jeske notes that Plaintiff did not believe that Patrick was declining, only that he had experienced "setbacks." *Id*.

Patrick was put on a ventilator in the hospital during this time and remained at the hospital. *Id*. at 22. The record is that DDS had "concerns about sister's ability" to care for Patrick, and that it was their hope he would not return home but obtain other care instead. *Id*. On the eighth day of Patrick's admittance, the hospital held a "care conference." *Id*. at 23. Records note "difficulty" weaning Patrick off the ventilator. Jeske herself emphasized that "going home would not be an option on a vent[ilator] due to the intensity of caregiving." *Id*.

At some point, Jeske decided to contact the DDS "abuse line" and spoke about her concerns with Plaintiff's caretaking. *Id*. Jeske spoke to Nancy Schwan (who Plaintiff has also sued, *Henderson v. Howard-Schwan*, 24-1755). Jeske also contacted protective services worker Chuck Miller about Patrick's aspiration of solid food. *Id*.

Plaintiff alleges that physicians and nurses failed to properly care for Patrick before he died. Compl. at 3. Plaintiff states "I am unsure if Miss Jeske was part of

these [events] but…if she was it would explain her obsession with me as a way of retaliatory revenge." *Id*.

## DISCUSSION

Plaintiff's claims are that Jeske "made 3 false protective services claims against me to Lane County Developmental Disability Services." *Id*. For the defamatory statements, she identifies Jeske's note that Plaintiff had not ensured Patrick was hydrated and Jeske's two calls to protective service workers. *Id*. at 3-4. Plaintiff also seeks to compel criminal charges against Jeske. *Id*. at 14. Plaintiff alleges that in rendering care, Jeske committed conspiracy to commit harm to Patrick; conspiracy to commit harm to Plaintiff, making false claims; tampering with medical records; covering up malpractice; and conspiracy to commit murder. *Id*. at 14-15. As relief, Plaintiff seeks attorney fees and "revocation of Leah Jeske[']s license to practice as a medical social worker." *Id*. at 14.

## I.    Standing to Bring Criminal Charges

The "irreducible constitutional minimum" of Article III standing requires the party invoking the court's jurisdiction to demonstrate they suffered an "injury in fact" that is concrete and particularized, "fairly traceable to the challenged action of the defendant," and "likely [to] be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and internal quotations omitted). For an injury to be concrete and particularized, it must "actually exist" and "affect the plaintiff in a personal and individual way," respectively. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (citations and internal quotations omitted). As such, a

"free-floating assertion of a procedural violation, without a concrete link to the interest protected by the procedural rules, does not constitute an injury in fact." *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 952 (9th Cir. 2006) (citation and internal quotations omitted).

Plaintiff brings nearly a dozen claims that she pleads as "criminal charges against Leah Jeske." Compl. at 14. Plaintiff, as a private citizen, does not have standing to bring criminal charges. *Cf. Schwettmann v. Starns*, 2023 WL 8284064, *2 (E.D. Cal. Nov. 30, 2023) ("[a] citizen does not have authority to bring criminal charges, either under state or federal law"); *see also Wormley v. Hemphill*, 2021 WL 11670848, *2 (D. C. Mar. 22, 2021) (dismissing the pro se plaintiff's claims brought "pursuant to various sections of Chapter 18 of the U.S. Code [because] none of those criminal statutes includes an express private right of action"). Only the state can bring criminal charges. *Wayte v. U.S.*, 470 U.S. 598, 607 (1985) (citations omitted).

## II.    **Federal Jurisdiction**

Federal courts are courts of limited jurisdiction and cannot hear every dispute presented by litigants. *Stock West, Inc v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Under "diversity" jurisdiction, a district court has jurisdictions over cases (1) where the matter in controversy exceeds the value of $75,000 and (2) there is complete diversity of the parties, meaning that the plaintiffs and the defendants are not citizens of the same state. 28 U.S.C. § 1332(a). Plaintiff states that she is a resident of Oregon and that Jeske is a resident of Oregon. Compl. at 1. Given that both

Plaintiff and Jeske are allegedly citizens of the same state, diversity jurisdiction does not apply.  28 U.S.C. § 1332.

Federal courts may exercise federal question jurisdiction.  Under federal question jurisdiction, a district court has jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Here, Plaintiff's Complaint fails to provide any actual federal basis for her claims.  First, Plaintiff's defamation and libel allegations are claims arising under state law rather than federal law.  *See e.g. Neumann v. Liles*, 358 Or. 706, 712 (2016) ("Libel is defamation by written or printed words.").  Oregon law governs defamation actions, which are well-established as state law claims, and the federal courts do not recognize jurisdiction over them in the absence of a valid federal question.  The Court further finds that amendment would be futile, as Plaintiff cannot allege new facts that would resolve the jurisdictional deficiencies in the complaint.  Fed. R. Civ. P. 15.

## CONCLUSION

The Court understands that the circumstances in this case are difficult; that Plaintiff was very involved in caretaking for her brother Patrick and that the loss would be painful for her.  On the law, the Court finds that it has no jurisdiction over Plaintiff's claims and that this case must be dismissed.  Plaintiff's IFP Petition, ECF No. 2, is DENIED.  The Complaint, ECF No. 1, is DISMISSED without service on Defendant and without leave to amend.

It is so ORDERED and DATED February 6, 2025.

/s/Ann Aiken
ANN AIKEN
United States District Judge